UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-9816-PA (KK) | Date: | November 22, 2019 |
| Title: | *Lance Williams v. Ralph Diaz, Warden* | | |

Present: The Honorable KENLY KIYA KATO, UNITED STATES MAGISTRATE JUDGE

| DEB TAYLOR | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Petitioner: | Attorney(s) Present for Respondent: |
|---|---|
| None Present | None Present |

Proceedings:    (In Chambers) Order to Show Cause Why this Action Should Not Be Dismissed as Untimely

# I.
# INTRODUCTION

Petitioner Lance Williams ("Petitioner") has filed a pro se Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. It appears, however, the Petition is subject to dismissal as untimely. The Court will provide Petitioner an opportunity to address this issue before making a final determination regarding whether the Petition should be dismissed.

# II.
# BACKGROUND

A.    STATE COURT PROCEEDINGS

On January 22, 2014, Petitioner was convicted of attempted extortion, stalking, and dissuading a witness after a jury trial in Los Angeles Superior Court. Dkt. 1, Pet. at 2, 11-28. In a bifurcated trial the jury also found true the prior conviction allegations. Id. On March 18, 2014, the trial court sentenced Petitioner to an aggregate state prison term of thirteen years and eight months. Id.

Petitioner appealed his conviction to the California Court of Appeal, which affirmed the judgment in a reasoned decision on December 22, 2015. Id. at 2-3, 11-28. Petitioner then filed a

petition for review in the California Supreme Court, which was denied on March 15, 2016. Id. at 3, 30.

On April 14, 2016, Petitioner filed a habeas petition in the Los Angeles Superior Court. Id. at 3-4, 32-33. On April 20, 2016, the Los Angeles Superior Court denied the petition. Id.

On July 21, 2017, Petitioner filed a habeas petition in the California Court of Appeal. Id. at 4, 35. On July 26, 2017, the California Court of Appeal denied the petition. Id.

On November 16, 2017, Petitioner filed a habeas petition in the California Supreme Court. Id. at 4, 37; Cal. Courts, Appellate Courts Case Info., Docket, https://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=2237192&doc_no=S245540&request_token=NiIwLSIkTkg%2BW1BJSCMtTE9IUFQ0UDxTJyNOUz5TMCAgCg%3D%3D (last updated Nov. 21, 2019 at 12:22 PM).[1] On June 13, 2018, the California Supreme Court denied the petition. Dkt. 1, Pet. at 4, 37.

Meanwhile, on March 2, 2018, Petitioner filed a second habeas petition in the Los Angeles Superior Court. Id. at 5, 39-40. On April 25, 2018, the Los Angeles Superior Court denied the petition. Id.

On May 11, 2018, Petitioner filed a second habeas petition in the California Court of Appeal. Id. at 5, 42. On May 16, 2018, the California Court of Appeal denied the petition. Id.

On July 5, 2018, Petitioner filed another habeas petition in the California Supreme Court. Id. at 5, 44; Cal. Courts, Appellate Courts Case Info., Docket, https://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=2256323&doc_no=S249821&request_token=NiIwLSIkTkg%2BW1BJSCMtTENIQEA0UDxTJyBOJzhTICAgCg%3D%3D (last updated Nov. 21, 2019 at 12:22 PM). On November 14, 2018, the California Supreme Court denied the petition. Dkt. 1, Pet. at 5, 44.

On March 22, 2019, Petitioner filed a petition for a writ of certiorari in the United States Supreme Court seeking review of the California Supreme Court's November 14, 2018 denial of his habeas petition. Williams v. California, __ U.S. __, 139 S. Ct. 2028, 204 L. Ed. 2d 229 (2019). On May 13, 2019, the United States Supreme Court denied the petition. Id.; Dkt. 1, Pet. at 6, 46.

B.  **FEDERAL HABEAS PROCEEDINGS**

On November 1, 2019, Petitioner constructively filed[2] the instant Petition. Dkt. 1-1, Pet. at 267. Petitioner sets forth the following twenty-eight grounds for relief from his 2014 conviction:

---

[1] The Court takes judicial notice of Petitioner's prior proceedings in this Court and in the state courts. See In re Korean Air Lines Co., 642 F.3d 685, 689 n.1 (9th Cir. 2011).

[2] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to court, the Court deems the pleading constructively filed on the date it is signed. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) (citation omitted).

1. Ineffective assistance of appellate counsel, dkt. 1 at 47-82, including ineffective assistance of appellate counsel for failure to present an insufficient evidence argument, id. at 83-121;
2. "The probable cause determination sheet in [the] instant case to arrest Petitioner was fabricated and falsified by arresting division, in order to bring Petitioner under arrest under false pretenses into custody to place no bail holds on him," id. at 122-34;
3. "Petitioner was never read his miranda rights, he was denied his 6th amendment right to counsel at his interrogation, he was threatened and given a promise of release if he made statement by detective Timo Illig," id. at 135-36;
4. "Hearsay statement by Detective Timo Illig in trial court was inadmissible and violated Petitioner's 6th amendment under Confrontation Clause," id. at 136-48;
5. "Erroneous admission of text messages as evidence that were not ever put under chain of custody or authenticated and were admittedly altered by alleged victim violating Petitioner's 5th and 14th amendment rights," id. at 149-82;
6. "Prosecution was supplied falsified evidence authored by lead detective Timo Illig that came out in trial proceedings," id. at 183-92;
7. "Prosecution deprived Petitioner of an adequate notice of prosecution's theory of case and clarification of distinct act that constituted a public offense," id. at 193-201;
8. "Petitioner's due process rights were violated during jury venire, jury instructions, voir dire and his right to fairness under cross section was violated," id. at 202-14;
9. "Erroneous denial of 17(B) motion and continuance during post-verdict after Petitioner requested to know court's intended sentence," id. at 215-32;
10. "Prosecution failed to present a prima facie case during their case-in-chief and court improperly denied Petitioner's acquittal motion pursuant to penal code 1118.1," id. at 233-39;
11. "Trial court erred by not declaring a mistrial when jury was exposed to defense witness Michael Robertson incarceration for similar offenses and Robertson was not properly advised of rights and procedures and 5th amendment and was threated by attorney Avery," id. at 240-50;
12. Brady errors "and judge and prosecutor misconduct," id. at 251-82;
13. "Petitioner was prejudiced and surprised by not being given opportunity to prepare for rebuttal evidence witness Steven Garcia called by prosecution[.] [T]his denied Petitioner a fair trial and violated Petitioner's rights as well as the denial of a requested continuance to prepare against this rebuttal," id. at 283-85;
14. "Petitioner's equal protection rights were denied due to requesting transcript of trial due to mental health disabilities for the prep[a]ration of new trial motion that was never started, finished, presented or ruled on before the court rendered judgment violating 14th amendment," id. at 286-331;
15. "Petitioner was denied opportunity to present witnesses and a defense and secure post-conviction counsel to prepare new trial motion," id. at 332-358, dkt. 1-1 at 1-28;
16. "Multiple punishment was error pursuant to penal code 654," dkt. 1-1 at 29-39;
17. "Newly discovered evidence being presented to prove Petitioner was prejudice[d] by deliberate alterations of people's exhibit 1 (The Contract)," id. at 40-57;
18. "Petitioner recently discovered he was provided inaccurate information by his private investigator regarding address and phone number to phone carriers of numbers Petitioner was approved to subpoena for evidence at trial that never showed up," id. at 58-88;
19. "Petitioner's non-statutory motion to dismiss was errantly denied and illegally denied due to the simple fact judge disregarded motion and evidence presented that proved a factual innocence that was new evidence," id. at 89-94;

20. "The trial court erred in allowing people's witness David Tika to testify as an expert and discovery of NEW EVIDENCE in light of his testimony," id. at 95-119;
21. "Brady violation by D.A. O'Hanlon and Newly Discovered Evidence obtained Feb[r]uary 17th, 2016 that goes to the weight of arguments in Grounds 1, 1A and 12," id. at 120-37;
22. "Petitioner's 6th amendment right to counsel was violated when court denied his request for counsel for probation violation hearing on probable cause," id. at 138-40;
23. "Petitioner challenges sentence enhancement pursuant to Lackawanna exceptions," id. at 141-91;
24. "Newly discovered evidence being actual physical cell phone that the alleged text were sent from that victim Sumiya Islam claimed to have received has been recovered and is available to review, Petitioner's sentence is cruel and unusual punishment violating his 8th amendment," id. at 192-95;
25. "Petitioner's non-statutory motion to set-aside information on all counts and Petitioner's motion to dismiss counts 1, 2, 3, 4, were denied by trial court in error and abuse of discretion," id. at 196;
26. "Pursuant to Senate Bill 142 Petitioner is entitled to resentence due to his severe mental illnesses he has a long standing history of and had prior to and at time of offense alleged," id. at 197-236;
27. "Petitioner erroneously given a 5 year enhancement added to his sentence pursuant to penal code 667(a)(1) by trial court," id. at 237; and
28. "Newly Discovered Evidence Court error in Petitioner's bifurcated prior trial jury instruction and denial of evidence Petitioner requested for bifurcated trial and denial of Petitioner's requested sua sponte jury instructions and court error not implementing sua sponte instruction making bifurcated trial prejudicial and unfair in violation of Petitioner's 5th, 6th, 14th amendments," id. at 238-65.[3]

## III.
## THE PETITION IS UNTIMELY AND IS SUBJECT TO DISMISSAL

### A. THE PETITION WAS FILED AFTER AEDPA'S ONE-YEAR LIMITATIONS PERIOD

Petitioner filed the Petition after April 24, 1996, the effective date of AEDPA. Dkt. 1. Therefore, the requirements for habeas relief set forth in AEDPA apply. Soto v. Ryan, 760 F.3d 947, 956-57 (9th Cir. 2014). AEDPA "sets a one-year limitations period in which a state prisoner must file a federal habeas corpus petition." Thompson v. Lea, 681 F.3d 1093, 1093 (9th Cir. 2012). Ordinarily, the limitations period runs from the date on which the prisoner's judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1) ("Section 2244(d)(1)"). "When, on direct appeal, review is sought in the state's highest court but no petition for certiorari to the United States Supreme Court is filed, direct review is considered to be final when the certiorari petition would have been due, which is ninety days after the decision of the state's highest court." Porter v. Ollison, 620 F.3d 952, 958-59 (9th Cir. 2010) (citations omitted).

---

[3] Petitioner notes that Ground 28 has not been fully exhausted in state court. Dkt. 1-1 at 238.

Here, Petitioner's conviction became final on June 13, 2016, i.e., ninety days after the California Supreme Court denied Petitioner's petition for review on March 15, 2016. Porter, 620 F.3d at 958-59. AEDPA's one-year limitations period commenced the next day, June 14, 2016, and expired on June 14, 2017. 28 U.S.C. § 2244(d)(1). However, Petitioner constructively filed the instant Petition on November 1, 2019. Dkt. 1-1, Pet. at 267. Therefore, in the absence of a later trigger date or any applicable tolling, the Court deems the Petition untimely by over two years under Section 2244(d)(1). Thompson, 681 F.3d at 1093.

**B.     PETITIONER IS NOT ENTITLED TO A LATER TRIGGER DATE**

Pursuant to 28 U.S.C. § 2244(d)(1), there are three situations where a petitioner may be entitled to a later trigger date of the one-year limitation period beyond the date of his conviction becoming final. First, under Subsection (B), if a state action prevented a petitioner from filing a federal habeas claim in violation of the Constitution or laws of the United States, the limitations period begins to run on "the date on which the impediment to filing an application created by State action in . . . is removed." 28 U.S.C. § 2244(d)(1)(B). Second, under Subsection (C), if a right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review, the limitations period begins to run on the "date on which the constitutional right asserted was initially recognized by the Supreme Court." 28 U.S.C. § 2244(d)(1)(C). Third, under Subsection (D), if a petitioner brings newly-discovered claims, the limitations period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). However, "AEDPA's one-year statute of limitations in § 2244(d)(1) applies to each claim in a habeas application on an individual basis." Mardesich v. Cate, 668 F.3d 1164, 1171 (9th Cir. 2012). Therefore, a different triggering date may apply to each claim in a petition. Id.

"The statute of limitations begins to run under § 2244(d)(1)(D) when the factual predicate of a claim '*could have been* discovered through the exercise of due diligence,' not when it *actually* was discovered." Ford v. Gonzalez, 683 F.3d 1230, 1235 (9th Cir. 2012) (emphasis added); see also Juniors v. Dexter, No. 07-1377-DMG (AGR), 2011 WL 1334422 at *2 n.3 (C.D. Cal. Jan. 14, 2011) ("[T]he statute starts running on the date when the petitioner knew or with the exercise of due diligence could have discovered the factual predicate of his claim, not from the date on which the petitioner obtains evidence to support his claim."). "Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001). In addition, "[t]he question is when petitioner had the essential facts underlying his claim, not when he obtained *additional* evidence supporting his claim." Coley v. Ducart, No. 2:16-1168-AC(P), 2017 WL 714304, at *4 (E.D. Cal. Feb. 23, 2017) (emphasis added).

Here, it does not appear Petitioner is entitled to a trigger date beyond the date on which his conviction became final. See 28 U.S.C. 2244(d)(1). First, Petitioner does not appear to be entitled to a later trigger date under Subsection (B) because he does not identify any state action that prevented him from filing a federal habeas claim in violation of the Constitution or laws of the United States. 28 U.S.C. § 2244(d)(1)(B). Second, Petitioner does not appear to be entitled to a later trigger date under Subsection (C) because Petitioner does not identify a newly-recognized right made retroactively available to cases on collateral review. Finally, to the extent Petitioner may argue he is entitled to a later trigger date for newly-discovered claims under Subsection (D), as detailed below,

Petitioner has not identified any evidence that was not, or could not have been, discovered before June 13, 2016 when his conviction became final.

Petitioner appears to refer to "new evidence" in connection with Grounds 17, 18, 20, 21, 24, and 28.

In Grounds 17 and 20, the "new evidence" described is a more legible version of the contract Petitioner entered into with the victim, than the version that was submitted to the jury. It appears Petitioner could have obtained a copy of his own contract at any time prior to his conviction becoming final. Petitioner's conclusory argument that his "no bail hold during case proceedings prevented him form obtain[in]g" the contract fails to state when he did obtain a copy and why he was unable to obtain a copy between the date of his conviction on January 22, 2014 and the date his conviction became final two and a half years later on June 13, 2016.

In Ground 18, Petitioner argues he "recently discovered he was provided inaccurate information by his private investigator" in connection with subpoenas the investigator had served on various relevant phone carriers. While not entirely clear, it appears Petitioner is arguing the subpoenas were incorrectly served on the wrong carriers, resulting in documents not being produced at trial. However, the documents attached to the Petition show Petitioner appears to have been advised in November 2013 who the carriers were for the relevant phone numbers and that Petitioner filled out the subpoenas. Therefore, it is unclear what exactly Petitioner has recently discovered, when he discovered it, and why he would not have been aware of it at the time he filled out the subpoenas.

In Ground 21, the "new evidence" is a CD of witness interviews Petitioner states was "obtained Feb[r]uary 17th, 2016", well before his conviction became final.

In Ground 24, the "new evidence" is the "actual physical cell phone" from which the offending text messages were sent to the victim. Petitioner argues the texts on the actual phone will show he was convicted through "perjury on the part of the prosecution witnesses." Dkt. 1-1 at 192. Petitioner claims he was "not able to recover [the phone] at anytime sooner than now due to his errant arrest and denial of bail that dislodged him from being able to make contact with a number of persons." Id. This conclusory argument fails to state when Petitioner obtained the phone, what the material differences are between the information on the phone and the witnesses' testimony at trial, and why Petitioner was unable to obtain the phone between the date of his conviction on January 22, 2014 and the date his conviction became final two and a half years later on June 13, 2016.

Finally, in Ground 28, Petitioner appears to argue he has newly discovered a claim involving the denial of his requested jury instruction and evidence during the bifurcated portion of his trial. However, the "[t]ime begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." Hasan, 254 F.3d at 1154 n.3. Therefore, the relevant time for Ground 28 appears to be when his jury instruction and evidence were denied, and not when he recently discovered the alleged legal significance of those facts. Thus, at the latest, the relevant date was when the jury was instructed during Petitioner's trial.

Hence, Petitioner has not shown he is entitled to a later trigger date for any of the Grounds set forth in the Petition.

## C. STATUTORY TOLLING DOES NOT RENDER THE PETITION TIMELY

"A habeas petitioner is entitled to statutory tolling of AEDPA's one-year statute of limitations while a 'properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.'" Nedds v. Calderon, 678 F.3d 777, 780 (9th Cir. 2012) (quoting 28 U.S.C. § 2244(d)(2) ("Section 2244(d)(2)")). Statutory tolling does not extend to the time between the date on which a judgment becomes final and the date on which the petitioner files his first state collateral challenge because, during that time, there is no case "pending." Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999). However, a petitioner is entitled to statutory tolling (i.e. gap tolling) for reasonable periods between the filing of properly filed applications for State post-conviction or other collateral review. Nedds, 678 F.3d at 781.

Nevertheless, "[a] petitioner who unreasonably delays in filing a state habeas petition would not be granted the benefit of statutory [gap] tolling because the petition would not be considered 'pending' or 'properly filed' within the meaning of § 2244(d)(2)." Nedds, 678 F.3d at 780 (citations omitted). If a state court denies the petitioner's state habeas petition and the petitioner fails to file a subsequent state habeas petition within a reasonable time period, the petitioner's unreasonable delay precludes statutory tolling. Evans v. Chavis, 546 U.S. 189, 201, 126 S. Ct. 846, 854, 163 L. Ed. 2d 684 (2006) (holding unreasonable a delay exceeding sixty days because "most States" allow delays of only thirty to sixty days); Stewart v. Cate, 757 F.3d 929, 937 (9th Cir. 2014) (holding unreasonable a delay of 100 days); Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010) (holding unreasonable delays of 101 days and 115 days). Moreover, "[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed." Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) (citation omitted).

Here, the Los Angeles Superior Court denied Petitioner's first state habeas petition on April 20, 2016, dkt. 1 at 3-4, 32-33, however, Petitioner did not file his next state habeas petition in the California Court of Appeal until July 21, 2017, id. at 4, 35. Petitioner is, therefore, not entitled to gap tolling for the period between these two state habeas petitions due to the unreasonable delay in of over a year. See Chaffer, 592 F.3d at 1048. Accordingly, AEDPA's one-year statute of limitations ended on June 14, 2017, over one month before Petitioner filed the habeas petition in the California Court of Appeal on July 21, 2017. Therefore, statutory tolling does not render the Petition timely. See Ferguson, 321 F.3d at 823.

## D. EQUITABLE TOLLING DOES NOT RENDER THE PETITION TIMELY

In addition to the statutory tolling provided for by Section 2244(d)(2), the "AEDPA limitations period may be tolled" when it is "equitably required." Doe v. Busby, 661 F.3d 1001, 1011 (9th Cir. 2011). The "threshold necessary to trigger equitable tolling [under AEDPA] is very high." Bills v. Clark, 628 F.3d 1092, 1097 (9th Cir. 2010) (alteration in original). A court may grant equitable tolling only where "'extraordinary circumstances' prevented an otherwise diligent petitioner from filing on time." Forbess v. Franke, 749 F.3d 837, 839 (9th Cir. 2014). The petitioner "bears a heavy burden to show that [he] is entitled to equitable tolling, 'lest the exceptions swallow the rule.'" Rudin v. Myles, 781 F.3d 1043, 1055 (9th Cir. 2015).

Here, Petitioner does not appear to specifically identify any reasons entitling him to equitable tolling and the Court has not found any basis to support such a claim. Thus, equitable tolling does not render the Petition timely. Bills, 628 F.3d at 1097.

# IV.
# ORDER

For the foregoing reasons, the Petition appears subject to dismissal. Petitioner is therefore **ORDERED TO SHOW CAUSE** why the Petition should not be dismissed as untimely by filing a written response no later than **December 13, 2019**.

ALTERNATIVELY, **Petitioner May Voluntarily Dismiss the Action Without Prejudice**: Instead of filing a response to the instant Order, Petitioner may request a voluntary dismissal of this action pursuant to Federal Rule of Civil Procedure 41(a). **The Clerk of the Court has attached a Notice of Dismissal form for Petitioner's convenience.** However, the Court warns Petitioner that if Petitioner should later attempt to again raise any dismissed claims in a subsequent habeas petition, those claims may be time-barred under the statute of limitations in Section 2244(d)(1). 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.").

**The Court warns Petitioner failure to timely file a response to this Order will result in the Court dismissing this action with prejudice as untimely, and for failure to prosecute and comply with court orders. See Fed. R. Civ. P. 41(b).**

**The Clerk of Court is directed to serve a copy of this Order on Petitioner at his current address of record.**

**IT IS SO ORDERED.**