1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7

CENTRAL DISTRICT OF CALIFORNIA

8
9

10   LANCE WILLIAMS,                      Case No. CV 19-9816-PA (KK)

11                        Petitioner,

12            v.                          FINAL REPORT AND
                                          RECOMMENDATION OF UNITED
13   RALPH DIAZ,                          STATES MAGISTRATE JUDGE

14                        Respondent.

15
16

17        This Final Report and Recommendation is submitted to the Honorable Percy

18   Anderson, United States District Judge, pursuant to 28 U.S.C. § 636 and General

19   Order 05-07 of the United States District Court for the Central District of California.

20                                    **I.**

21                    **<u>SUMMARY OF RECOMMENDATION</u>**

22        Petitioner Lance Williams ("Williams") has filed a <u>pro se</u> Petition for Writ of

23   Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254.  ECF Docket No. ("Dkt.")

24   1, Pet.  Respondent filed a Motion to Dismiss ("Motion") arguing the Petition is

25   untimely.  Dkt. 30.  Williams did not file an Opposition ("Opposition").  For the

26   reasons stated below, the Court recommends GRANTING Respondent's Motion.

27   ///

28   ///

# II.

# PROCEDURAL HISTORY

## A.   STATE COURT PROCEEDINGS

On January 22, 2014, following a jury trial in the Los Angeles County Superior Court, Williams was convicted of (1) attempted extortion in violation of section 524 of the California Penal Code, (2) stalking in violation of section 646.9(a) of the California Penal Code, and (3) dissuading a witness in violation of section 136.1(B)(1) of the California Penal Code.  Dkt. 1, Pet. at 2, 11-28; Lodged Document No. ("Lodg.")[1] 1, Volume 2 of 2, at 115.  The charges arose from statements Williams

---

[1]    The Court's citations to Lodged Documents refer to documents Respondent lodged in support of the Motion to Dismiss.  See dkt. 31, Not. of Lodging. Respondent identifies the documents as follows:

1. Clerk's Transcript, 2 Volumes, Lodg. 1 ("Lodg. 1")

2. Supplemental Clerk's Transcript ("Lodg. 2")

3. Augmented Clerk's Transcript ("Lodg. 3")

4. Appellant's Opening Brief Filed in California Court of Appeal (Case No. B255379) ("Lodg. 4")

5. Respondent's Brief Filed in California Court of Appeal (Case No. B255379) ("Lodg. 5")

6. Reply Brief Filed in California Court of Appeal (Case No. B255379) ("Lodg. 6")

7. Opinion Filed in California Court of Appeal (Case No. B255379) ("Lodg. 7")

8. Petition for Review filed in California Supreme Court (Case No. S232011) ("Lodg. 8")

9. Order Denying Petition for Review in California Supreme Court (Case No. S232011) ("Lodg. 9")

10. Petition for Writ of Habeas Corpus in California Court of Appeal (Case No. B283912) ("Lodg. 10")

11. Order Denying Petition for Writ of Habeas Corpus in California Court of Appeal (B283912) ("Lodg. 11")

12. Petition for Writ of Habeas Corpus in California Supreme Court (Case No. S245540) ("Lodg. 12")

2

13. Order Denying Petition for Writ of Habeas Corpus in California Supreme Court (Case No. S245540) ("Lodg. 13")

14. Los Angeles County Superior Court Minute Order Recording Receipt of Petition for Writ of Habeas Corpus ("Lodg. 14")

15. Los Angeles County Superior Court Minute Order Recording Receipt of Petition for Writ of Habeas Corpus ("Lodg. 15")

16. Los Angeles County Superior Court Minute Order Denying Motion to Vacate Judgment ("Lodg. 16")

17. Petition for Writ of Habeas Corpus in California Court of Appeal (Case No. B289973) ("Lodg. 17")

18. Order Denying Petition for Writ of Habeas Corpus in California Court of Appeal (Case No. B289973) ("Lodg. 18")

19. Petition for Writ of Habeas Corpus in California Court of Appeal (Case No. B290149) ("Lodg. 19")

20. Order Denying Petition for Writ of Habeas Corpus in California Court of Appeal (Case No. B290149) ("Lodg. 20")

21. Petition for Writ of Habeas Corpus in California Supreme Court (Case No. S249348) ("Lodg. 21")

22. Order Denying Petition for Writ of Habeas Corpus in California Supreme Court (Case No. S249348) ("Lodg. 22")

23. Petition for Writ of Habeas Corpus in California Supreme Court (Case No. S249821) ("Lodg. 23")

24. Order Denying Petition for Writ of Habeas Corpus in California Supreme Court (Case No. S249821) ("Lodg. 24")

25. Los Angeles County Superior Court Minute Order Denying Request for Subpoena ("Lodg. 25")

26. Petition for Writ of Certiorari in United States Supreme Court (Case No. 18-8533) ("Lodg. 26")

27. Order Denying Petition for Writ of Certiorari in United States Supreme Court (Case No. 18-8533) ("Lodg. 27")

28. Los Angeles County Superior Court Minute Order Noting Filing of Habeas Petition ("Lodg. 28")

29. Los Angeles County Superior Court Minute Order Noting Filing of Habeas Petition ("Lodg. 29")

1

2

_____

3  30. Petition for Writ of Habeas Corpus in California Supreme Court (Case No. S254050) ("Lodg. 30")

4

5  31. Order Denying Petition for Writ of Habeas Corpus in California Supreme Court (Case No. S254050) ("Lodg. 31")

6  32. Los Angeles County Superior Court Minute Order Denying Mental Health Diversion ("Lodg. 32")

7

8  33. Petition for Writ of Habeas Corpus in California Court of Appeal (Case No. B298992) ("Lodg. 33")

9  34. Order Denying Petition for Writ of Habeas Corpus in California Court of Appeal (Case No. B298992) ("Lodg. 34")

10

11  35. Petition for Writ of Habeas Corpus in California Court of Appeal (Case No. B296933) ("Lodg. 35")

12  36. Order Denying Petition for Writ of Habeas Corpus in California Court of Appeal (Case No. B296933) ("Lodg. 36")

13

14  37. Petition for Writ of Habeas Corpus in California Supreme Court (Case No. S256871) ("Lodg. 37")

15

16  38. Order Denying Petition for Writ of Habeas Corpus in California Supreme Court (Case No. S256871) ("Lodg. 38")

17  39. Petition for Writ of Habeas Corpus in California Supreme Court (Case No. S257000) ("Lodg. 39")

18

19  40. Order Denying Petition for Writ of Habeas Corpus in California Supreme Court (Case No. S257000) ("Lodg. 40")

20  41. Los Angeles County Superior Court Minute Order Noting Filing of Habeas Petition ("Lodg. 41")

21

22  42. Los Angeles County Superior Court Minute Order Denying Habeas Petition ("Lodg. 42")

23  43. Petition for Writ of Habeas Corpus in California Court of Appeal (Case No. B303387) ("Lodg. 43")

24

25  44. Order Denying Petition for Writ of Habeas Corpus in California Court of Appeal (Case No. B303387) ("Lodg. 44")

26  45. Petition for Writ of Habeas Corpus in California Supreme Court (Case No. S260234) ("Lodg. 45")

27

28  46. Order Denying Petition for Writ of Habeas Corpus in California Supreme Court (Case No. S260234) ("Lodg. 46")

4

1   allegedly made in a series of text messages following a disagreement about a contract

2   involving nude modeling.  Lodg. 4 at 9.

3        In a bifurcated jury trial, the jury also found true a prior conviction allegation

4   for criminal threats.  Pet. at 2, 17; Lodg. 1, Volume 2 of 2, at 46, 53.  The trial court

5   sentenced Williams to an aggregate prison term of thirteen years and eight months.

6   Lodg. 1, Volume 2 of 2, at 120.

7        Williams appealed his conviction in the California Court of Appeal (Case No.

8   B255379).  Lodg. 4.  On December 22, 2015, the California Court of Appeal affirmed

9   the judgment.  Lodg. 7 at 1.

10       Williams filed a petition for review in the California Supreme Court (Case No.

11  S232011).  Lodg. 8.  On March 9, 2016, the California Supreme Court denied the

12  petition for review.  Lodg. 9.

13       On March 20, 2016, Williams constructively filed[2] a habeas petition in the Los

14  Angeles County Superior Court (Case No. LA075334) purportedly raising Grounds

15  One through Twenty-Five, as presented in the instant Petition.  Pet. at 32-33; Dkt. 15

16  at 21; Lodg. 10 at 502-04.  On April 20, 2016, the superior court denied the petition.

17  Pet. at 32-33; Lodg. 10 at 503-04.

18       On July 17, 2017, Williams constructively filed a habeas petition in the

19  California Court of Appeal (Case No. B283912) renewing Grounds One through

20  Twenty-Five.  Lodg. 10.  On July 26, 2017, the California Court of Appeal denied the

21  petition.  Lodg. 11.

22       On November 10, 2017, Williams constructively filed a habeas petition in the

23  California Supreme Court (Case No. S245540) renewing Grounds One through

24  Twenty-Five.  Lodg. 12.  On June 13, 2018, the California Supreme Court denied the

25  petition.  Lodg. 13.

26  ───────────────

27  [2]    Under the "mailbox rule," when a pro se prisoner gives prison authorities a
    pleading to mail to court, the Court deems the pleading constructively filed on the
28  date it is signed.  Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) (citation
    omitted).

1    On March 2, 2018, Williams filed a second habeas petition in the Los Angeles
2    County Superior Court (Case No. LA075334-01) raising Grounds Twenty-Six and
3    Twenty-Seven as alleged in the instant Petition.  Pet. at 39.  On April 25, 2018, the
4    superior court denied the petition.  Pet. at 40.

5    On May 10, 2018, Williams constructively filed a second habeas petition in the
6    California Court of Appeal (Case No. B289973), renewing Grounds Twenty-Six and
7    Twenty-Seven.  Lodg. 17 at 3-7.  On May 16, 2018, the California Court of Appeal
8    summarily denied the petition.  Lodg. 18.

9    On June 30, 2018, Williams constructively filed a habeas petition in the
10   California Supreme Court (Case No. S249821), renewing Grounds Twenty-Six and
11   Twenty-Seven.  Lodg. 23.  On November 14, 2018, the California Supreme Court
12   denied the petition.  Lodg. 24.

13   On January 31, 2019, Williams constructively filed a <u>certiorari</u> petition in the
14   United States Supreme Court (Case No. 18-8533).  Lodg. 26.  On May 13, 2019, the
15   United States Supreme Court denied the petition.  Lodg. 27 at 1.

16   On August 29, 2019, Williams filed a third habeas petition in the Los Angeles
17   County Superior Court, raising Ground Twenty-Eight.  Lodg. 41.  On October 11,
18   2019, the superior court denied the petition.  Lodg. 42.

19   On December 23, 2019, Williams constructively filed a third habeas petition in
20   the California Court of Appeal (Case No. B303387) renewing his Ground Twenty-
21   Eight claim.  Lodg. 43 at 7.  On January 6, 2020, the California Court of Appeal
22   denied the petition.  Lodg. 44.

23   On January 13, 2020, Williams constructively filed a habeas petition in the
24   California Supreme Court (Case No. S260234), raising Ground Twenty-Eight.  Lodg.
25   45.  On March 25, 2020, the California Supreme Court denied the petition.  Lodg. 46.
26   ///
27   ///
28   ///

**B.   FEDERAL COURT PROCEEDINGS**

On November 1, 2019, Williams constructively filed the instant Petition. Dkt. 1, Pet. Petitioner sets forth the following twenty-eight grounds for relief from his 2014 conviction:

1. Ineffective assistance of appellate counsel, id. at 47-82, including ineffective assistance of appellate counsel for failure to present an insufficient evidence argument, id. at 83-121;

2. "The probable cause determination sheet in [the] instant case to arrest Petitioner was fabricated and falsified by arresting division, in order to bring Petitioner under arrest under false pretenses into custody to place no bail holds on him," id. at 122-34;

3. "Petitioner was never read his miranda rights, he was denied his 6th amendment right to counsel at his interrogation, he was threatened and given a promise of release if he made statement by detective Timo Illig," id. at 135-36;

4. "Hearsay statement by Detective Timo Illig in trial court was inadmissible and violated Petitioner's 6th amendment under Confrontation Clause," id. at 136-48;

5. "Erroneous admission of text messages as evidence that were not ever put under chain of custody or authenticated and were admittedly altered by alleged victim violating Petitioner[']s 5th and 14th amendment rights," id. at 149-82;

6. "Prosecution was supplied falsified evidence authored by lead detective Timo Illig that came out in trial proceedings," id. at 183-92;

7. "Prosecution deprived Petitioner of an adequate notice of prosecution[']s theory of case and clarification of distinct act that constituted a public offense," id. at 193-201;

8. "Petitioner[']s due process rights were violated during jury venire, jury instructions, voir dire and his right to fairness under cross section was violated," id. at 202-14;

9. "Erroneous denial of 17(B) motion and continuance during post-verdict after Petitioner requested to know court[']s intended sentence," id. at 215-32;

10. "Prosecution failed to present a prima facie case during their case-in-chief and court improperly denied Petitioner[']s acquittal motion pursuant to penal code 1118.1," id. at 233-39;

11. "Trial court erred by not declaring a mistrial when jury was exposed to defense witness Michael Robertson incarceration for similar offenses and Robertson was not properly advised of rights and procedures and 5th amendment and was threatened by attorney Avery," id. at 240-50;

12. Brady errors "and judge and prosecutor misconduct," id. at 251-82;

13. "Petitioner was prejudiced and surprised by not being given opportunity to prepare for rebuttal evidence witness Steven Garcia called by prosecution[.] [T]his denied Petitioner a fair trial and violated Petitioner's rights as well as the denial of a requested continuance to prepare against this rebuttal," id. at 283-85;

14. "Petitioner[']s equal protection rights were denied due to requesting transcript of trial due to mental health disabilities for the prep[a]ration of new trial motion that was never started, finished, presented or ruled on before the court rendered judgment violating 14th amendment," id. at 286-331;

15. "Petitioner was denied opportunity to present witnesses and a defense and secure post-conviction counsel to prepare new trial motion," id. at 332-358, dkt. 1-1 at 1-28;

16. "Multiple punishment was error pursuant to penal code 654," dkt. 1-1 at 29-39;

17. "Newly discovered evidence being presented to prove Petitioner was prejudice[d] by deliberate alterations of people[']s exhibit 1 (The Contract)," id. at 40-57;

18. "Petitioner recently discovered he was provided inaccurate information by his private investigator regarding address and phone number to phone carriers of numbers Petitioner was approved to subpoena for evidence at trial that never showed up," id. at 58-88;

19. "Petitioner[']s non-statutory motion to dismiss was errantly denied and illegally denied due to the simple fact judge disregarded motion and evidence presented that proved a factual innocence that was new evidence," id. at 89-94;

20. "The trial court erred in allowing people[']s witness David Tika to testify as an expert and discovery of NEW EVIDENCE in light of his testimony," id. at 95-119;

21. "Brady violation by D.A. O'Hanlon and Newly Discovered Evidence obtained Feb[r]uary 17th, 2016 that goes to the weight of arguments in Grounds 1, 1A and 12," id. at 120-37;

22. "Petitioner's 6th amendment right to counsel was violated when court denied his request for counsel for probation violation hearing on probable cause," id. at 138-40;

23. "Petitioner challenges sentence enhancement pursuant to Lackawanna exceptions," id. at 141-91;

24. "Newly Discovered Evidence being actual physical cell phone that the alleged text were sent from that victim Sumiya Islam claimed to have received has been recovered and is available to review, Petitioner[']s sentence is cruel and unusual punishment violating his 8th amendment," id. at 192-95;

25. "Petitioner[']s non-statutory motion to set-aside information on all counts and Petitioner[']s motion to dismiss counts 1, 2, 3, 4, were denied by trial court in error and abuse of discretion," id. at 196;

26. "Pursuant to Senate Bill 142 Petitioner is entitled to resentence due to his severe mental illnesses he has a long standing history of and had prior to and at time of offense alleged," id. at 197-236;

9

1    27. "Petitioner erroneously given a 5 year enhancement added to his sentence

2        pursuant to penal code 667(a)(1) by trial court," <u>id.</u> at 237; and

3    28. "'Newly Discovered Evidence' Court error in Petitioner[']s bifurcated prior trial

4        jury instruction and denial of evidence petitioner requested for bifurcated trial

5        and denial of Petitioner[']s requested sua sponte jury instructions and court

6        error not implementing sua sponte instruction making bifurcated trial

7        prejudicial and unfair in violation of petitioner[']s 5th, 6th, and 14th

8        amendments," <u>id.</u> at 238-65.[3]

9        On November 22, 2019, the Court issued an Order to Show Cause Why this

10   Action Should Not Be Dismissed as Untimely.  Dkt. 6.  Williams filed a Response to

11   the Order to Show Cause, arguing he is entitled to a later trigger date of the

12   Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") one-year

13   limitations period and is entitled to equitable and statutory tolling.  Dkt. 15.

14       On August 5, 2020, Respondent filed the instant Motion arguing the Petition

15   should be dismissed as untimely.  Dkt. 30.  Williams did not file an Opposition.

16       On December 30, 2020, the Court issued a Report and Recommendation that

17   the Petition be dismissed as untimely.  Dkt. 39.

18       On June 15, 2021, Williams constructively filed Objections to the Report and

19   Recommendation, arguing Williams should be afforded an opportunity to file an

20   Opposition to Respondent's Motion[4] and the Petition is timely.[5]  Dkt. 49.

21

22   [3] Petitioner noted Ground 28 had not been fully exhausted in state court.  Pet., dkt. 1-1 at 238.

23   [4]    To the extent Williams seeks additional time to file an Opposition, the Court
     previously granted Williams' request for a sixty-day extension of time to file an
24   Opposition.  Dkt. 36.  In total, Williams was permitted ninety days to file an
     Opposition, but failed to do so.  <u>See</u> dkts. 33, 36.  Under these circumstances, any
25   further request for additional time is not warranted and is, therefore, DENIED.

26   [5]    In his Objections to the Report and Recommendation, Williams repeats the
     arguments set forth in his Response to the Court's November 22, 2019 Order to
27   Show Cause that (1) the Petition was filed within AEDPA's one-year limitations
     period, (2) Williams is entitled to a later trigger date, (3) Williams is entitled to
28   statutory tolling, and (4) Williams is entitled to equitable tolling.  Dkt. 49 at 11-27; <u>see</u>

1    The Court herein issues a Final Report and Recommendation addressing

2    Williams' Objections in Section III. A. and footnotes 4 and 5.

3    <center>**III.**</center>

4    <center><u>**DISCUSSION**</u></center>

5    **A.    WILLIAMS' FAILURE TO FILE AN OPPOSITION IS DEEMED AS**

6    **CONSENT TO GRANTING RESPONDENT'S MOTION**

7    **1.    Applicable Law**

8    "The Court may decline to consider any memorandum or other document not

9    filed within the deadline set by order or local rule.  The failure to file any required

10    document, or the failure to file it within the deadline may be deemed consent to the

11    granting or denial of the motion[.]"  <u>See</u> L.R. 7-12; <u>Greta v. Gonzalez</u>, No. CV 11-

12    06032 JVS RZ, 2012 WL 1439537, at *1-2 (C.D. Cal. Mar. 6, 2012), <u>report and</u>

13    <u>recommendation adopted</u>, 2012 WL 1439534 (C.D. Cal. Apr. 25, 2012) (finding where

14    petitioner has failed to submit an opposition to respondent's motion to dismiss the

15    petition as untimely, the court should exercise its discretion to deem petitioner's non-

16    opposition as his consent to granting the motion).

17    **2.    Analysis**

18    Here, Williams did not file an Opposition to the Motion.  In his Objections to

19    the original Report and Recommendation, Williams argues the lack of access to the

20    law library, lockdowns, quarantining due to COVID-19, confiscation of his legal

21    materials, placement in the administrative segregation unit, and a transfer to a

22    different institution prevented him from filing an Opposition to the Motion.  Dkt. 49

23    at 1-4.  Williams, however, concedes he received Respondent's Motion between

24    August 5, 2020 and August 25, 2020 and was able to file pleadings, including requests

25    for an extension of time to file an Opposition on August 25, 2020 and a request for

26    appointment of counsel on October 13, 2020.  Dkt. 49 at 2-3; <u>see also</u> dkts. 35, 37.

27    _____

28    <u>also</u> dkt. 15.  The Court has already considered and rejected these arguments in its analysis.

1  Moreover, the Court granted Williams ninety days to file an Opposition to

2  Respondent's Motion.  Dkts. 33, 36.  Accordingly, the Court construes Williams'

3  failure to file a timely opposition as consent to granting the Motion.  Additionally, as

4  discussed below, in considering the merits of the Motion, the Court finds the Petition

5  subject to dismissal as untimely.

6  **B.     THE PETITION WAS FILED AFTER AEDPA'S ONE-YEAR**

7          **LIMITATIONS PERIOD**

8          **1.      Applicable Law**

9          AEDPA "sets a one-year limitations period in which a state prisoner must file a

10  federal habeas corpus petition." Thompson v. Lea, 681 F.3d 1093, 1093 (9th Cir.

11  2012) (citation omitted).  Ordinarily, the limitations period runs from the date on

12  which the prisoner's judgment of conviction "became final by the conclusion of direct

13  review or the expiration of the time for seeking such review[.]"  28 U.S.C. § 2244(d)(1)

14  ("Section 2244(d)(1)").  "When, on direct appeal, review is sought in the state's

15  highest court but no petition for certiorari to the United States Supreme Court is filed,

16  direct review is considered to be final when the certiorari petition would have been

17  due, which is ninety days after the decision of the state's highest court." Porter v.

18  Ollison, 620 F.3d 952, 958-59 (9th Cir. 2010) (citations omitted).

19          **2.      Analysis**

20          Williams filed the Petition after April 24, 1996, the effective date of AEDPA.

21  See dkt. 1.  The requirements for habeas relief set forth in AEDPA, therefore, apply.

22  Soto v. Ryan, 760 F.3d 947, 956-57 (9th Cir. 2014).

23          Williams' conviction became final on June 7, 2016, i.e., ninety days after the

24  California Supreme Court denied Williams' petition for review on March 9, 2016.

25  Porter, 620 F.3d at 958-59.  AEDPA's one-year limitations period commenced the

26  next day, June 8, 2016, and expired on June 8, 2017.  28 U.S.C. § 2244(d)(1).

27  Williams, however, did not constructively file the instant Petition until November 1,

28

2019.  Pet. at 267.  Thus, in the absence of a later trigger date or any applicable tolling, the Petition is untimely by over two years.  <u>Thompson</u>, 681 F.3d at 1093.

## C.   WILLIAMS IS NOT ENTITLED TO A LATER TRIGGER DATE

### 1.   Applicable Law

Pursuant to Section 2244(d)(1), there are three situations where a petitioner may be entitled to a later trigger date of the one-year limitation period beyond the date of his conviction becoming final.  28 U.S.C. § 2244(d)(1).  First, under Subsection (B), if a state action prevented a petitioner from filing a federal habeas claim in violation of the Constitution or laws of the United States, the limitations period begins to run on "the date on which the impediment to filing an application created by State action . . . is removed[.]"  28 U.S.C. § 2244(d)(1)(B).  Second, under Subsection (C), if a right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review, the limitations period begins to run on the "date on which the constitutional right asserted was initially recognized by the Supreme Court[.]"  28 U.S.C. § 2244(d)(1)(C).  Third, under Subsection (D), if a petitioner brings newly-discovered claims, the limitations period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).  However, "AEDPA's one-year statute of limitations in § 2244(d)(1) applies to each claim in a habeas application on an individual basis."  <u>Mardesich v. Cate</u>, 668 F.3d 1164, 1171 (9th Cir. 2012).  A different triggering date, therefore, may apply to each claim in a petition.  <u>Id.</u>

"The statute of limitations begins to run under § 2244(d)(1)(D) when the factual predicate of a claim '<u>could have been</u> discovered through the exercise of due diligence,' not when it <u>actually</u> was discovered."  <u>Ford v. Gonzalez</u>, 683 F.3d 1230, 1235 (9th Cir. 2012) (emphasis added); <u>see also</u> <u>Juniors v. Dexter</u>, No. 07-1377-DMG (AGR), 2011 WL 1334422 at *2 n.3 (C.D. Cal. Jan. 14, 2011) ("[T]he statute starts running on the date when the petitioner knew or with the exercise of due diligence could have discovered the factual predicate of his claim, not from the date on which

1    the petitioner obtains evidence to support his claim.") (citation omitted).  "Time

2    begins when the prisoner knows (or through diligence could discover) the important

3    facts, not when the prisoner recognizes their legal significance."  Hasan v. Galaza, 254

4    F.3d 1150, 1154 n.3 (9th Cir. 2001) (citation omitted).  In addition, "[t]he question is

5    when petitioner had the essential facts underlying his claim, not when he obtained

6    additional evidence supporting his claim."  Coley v. Ducart, No. 2:16-1168-AC (P),

7    2017 WL 714304, at *4 (E.D. Cal. Feb. 23, 2017) (emphasis added).

8         **2.    Analysis**

9         Williams is not entitled to a trigger date beyond the date on which his

10   conviction became final.  See 28 U.S.C. 2244(d)(1).

11        First, Williams does not show he is entitled to a later trigger date under

12   Subsection (B) because he does not identify any state action that prevented him from

13   filing a federal habeas claim in violation of the Constitution or laws of the United

14   States.  28 U.S.C. § 2244(d)(1)(B).

15        Second, Williams does not show he is entitled to a later trigger date under

16   Subsection (C) because he does not identify a newly-recognized right made

17   retroactively available to cases on collateral review.  28 U.S.C. § 2244(d)(1)(C).

18        Finally, to the extent Williams may argue he is entitled to a later trigger date for

19   newly-discovered claims under Subsection (D), he has not identified any evidence that

20   was not, or could not have been, discovered before June 7, 2016 when his conviction

21   became final.  28 U.S.C. § 2244(d)(1)(D).  Williams appears to claim "new evidence"

22   in connection with Grounds 17, 18, 20, 21, 24, and 28, but fails to justify a later trigger

23   date as discussed below.

24        In Grounds 17 and 20, the "new evidence" described is a more legible version

25   of the contract Williams entered into with the victim, than the version that was

26   submitted to the jury.  See Pet., dkt. 1-1 at 40-57, 95-119.  It appears Williams could

27   have obtained a copy of his own contract at any time prior to his conviction

28   becoming final.  Williams' conclusory argument that his "no bail hold during case

14

1   proceedings prevented him from obtain[in]g" the contract fails to explain how he

2   eventually obtained the contract or why he was unable to obtain the contract between

3   the date of his conviction on January 22, 2014 and the date his conviction became

4   final two and a half years later on June 7, 2016.  See id. at 40.

5       In Ground 18, Williams argues he "recently discovered he was provided

6   inaccurate information by his private investigator" in connection with subpoenas the

7   investigator had served on various relevant phone carriers.  Id. at 58.  While not

8   entirely clear, it appears Williams is arguing the subpoenas were served on the wrong

9   carriers, resulting in documents not being produced at trial.  The documents attached

10  to the Petition, however, show Williams was advised in November 2013 that the

11  subpoenas were served on the correct carriers and that it was Williams who filled out

12  the subpoenas that were served.  Id. at 76-86.  It is, therefore, unclear what exactly

13  Williams has recently discovered, when he discovered it, and why he would not have

14  been aware of it at the time he filled out the subpoenas.

15      In Ground 21, the "new evidence" is a CD of witness interviews Williams

16  states was "obtained Feb[r]uary 17th, 2016," well before his conviction became final.

17  Id. at 120.

18      In Ground 24, the "new evidence" is the "actual physical cell phone" from

19  which the offending text messages were sent to the victim.  Id. at 192.  Williams

20  argues the texts on the actual phone will show he was convicted through "perjury on

21  the part of the prosecution witnesses," id., and will "rebut defense argument that

22  petitioner was in possession of phone when text were sent," dkt. 15 at 11.  Williams

23  claims he was "not able to recover [the phone] at anytime sooner than now due to his

24  errant arrest and denial of bail that dislodged him from being able to make contact

25  with a number of persons."  Pet., dkt. 1-1 at 192.  This conclusory argument fails to

26  state when Petitioner obtained the phone, what the material differences are between

27  the information on the phone and the witnesses' testimony at trial, and why Williams

28  was unable to obtain the phone between the date of his conviction on January 22,

15

1  2014 and the date his conviction became final two and a half years later on June 7,

2  2016.

3        Finally, in Ground 28, Williams appears to argue he has newly discovered a

4  claim involving the denial of his requested jury instruction and evidence during the

5  bifurcated portion of his trial.  See id. at 238-65.  Williams specifically argues because

6  he discovered the factual predicate for the claim on August 29, 2019, that date should

7  be the new trigger date for Ground 28.  Dkt. 15 at 13.  The time, however, "begins

8  when the prisoner knows (or through diligence could discover) the important facts,

9  not when the prisoner recognizes their legal significance."  Hasan, 254 F.3d at 1154

10  n.3.  The relevant time for Ground 28, therefore, appears to be when his jury

11  instruction and evidence were denied.  Thus, at the latest, the relevant date was when

12  the jury was instructed during Williams' trial.

13        Hence, Williams has not shown he is entitled to a later trigger date for any of

14  the Grounds set forth in the Petition.

15  **D.    STATUTORY TOLLING DOES NOT RENDER THE PETITION**

16         **TIMELY**

17      **1.    Applicable law**

18  "A habeas petitioner is entitled to statutory tolling of AEDPA's one-year

19  statute of limitations while a 'properly filed application for State post-conviction or

20  other collateral review with respect to the pertinent judgment or claim is pending.'"

21  Nedds v. Calderon, 678 F.3d 777, 780 (9th Cir. 2012) (quoting 28 U.S.C. § 2244(d)(2)

22  ("Section 2244(d)(2)")).  Statutory tolling does not extend to the time between the

23  date on which a judgment becomes final and the date on which the petitioner files his

24  first state collateral challenge because during that time, there is no case "pending."

25  Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

26        A petitioner, however, is entitled to statutory tolling (i.e. gap tolling) for

27  reasonable periods between the filing of properly filed applications for state post-

28  conviction or other collateral review.  Nedds, 678 F.3d at 781.  Nevertheless, "[a]

1   petitioner who unreasonably delays in filing a state habeas petition would not be
2   granted the benefit of statutory [gap] tolling because the petition would not be
3   considered 'pending' or 'properly filed' within the meaning of § 2244(d)(2)."   Id. at
4   780 (citations omitted).  If a state court denies the petitioner's state habeas petition
5   and the petitioner fails to file a subsequent state habeas petition within a reasonable
6   time period, the petitioner's unreasonable delay precludes statutory tolling.  See Evans
7   v. Chavis, 546 U.S. 189, 201 (2006) (holding that absent a clear indication to the
8   contrary by the state legislature or state court, an unexplained and unjustified gap
9   between filings of six months was "unreasonable").  Moreover, "[S]ection 2244(d)
10  does not permit the reinitiation of the limitations period that has ended before the
11  state petition was filed."  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003)
12  (citation omitted).

13          **2.    Analysis**

14          Here, the Los Angeles County Superior Court denied Williams' first state
15  habeas petition on April 20, 2016. Pet. at 3-4, 32-33.  Williams, however, did not file
16  his next state habeas petition in the California Court of Appeal until July 17, 2017.
17  Lodg. 10.  The Court finds this nearly fifteen-month delay unreasonable.  See Evans,
18  546 U.S. at 201.  Williams, therefore, is not entitled to gap tolling for the period
19  between the denial of his superior court habeas petition on April 20, 2016 and the
20  filing of his California Court of Appeal habeas petition on July 17, 2017.

21          In addition, because AEDPA's one-year statute of limitations expired on June
22  8, 2017, Petitioner is not entitled to statutory tolling during the pendency of his
23  California Court of Appeal habeas petition filed on July 17, 2017 or any other
24  subsequent state petition.  Ferguson, 321 F.3d at 823.  Hence, statutory tolling does
25  not render the Petition timely.  See id.
26  ///
27  ///
28  ///

**E.      WILLIAMS IS NOT ENTITLED TO EQUITABLE TOLLING**

**1.      Applicable law**

In addition to the statutory tolling provided for by Section 2244(d)(2), the "AEDPA limitations period may be tolled" when it is "equitably required." <u>Doe v. Busby</u>, 661 F.3d 1001, 1011 (9th Cir. 2011) (citations omitted). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005); <u>see also</u> <u>Forbess v. Franke</u>, 749 F.3d 837, 839 (9th Cir. 2014) (noting courts may grant equitable tolling only where "'extraordinary circumstances' prevented an otherwise diligent petitioner from filing on time" (citation omitted)). Petitioner must prove the alleged extraordinary circumstance was a proximate cause of his untimeliness and the extraordinary circumstance made it impossible to file a petition on time. <u>Ramirez v. Yates</u>, 571 F.3d 993, 997 (9th Cir. 2009); <u>Roy v. Lampert</u>, 465 F.3d 964, 973 (9th Cir. 2006) (citing <u>Stillman v. LaMarque</u>, 319 F.3d 1199, 1203 (9th Cir. 2003)). The "threshold necessary to trigger equitable tolling [under AEDPA] is very high[.]" <u>Bills v. Clark</u>, 628 F.3d 1092, 1097 (9th Cir. 2010) (internal quotation marks and citation omitted). The petitioner "bears a heavy burden to show that [he] is entitled to equitable tolling, lest the exceptions swallow the rule[.]" <u>Rudin v. Myles</u>, 781 F.3d 1043, 1055 (9th Cir. 2014) (internal quotation marks and citation omitted).

Moreover, a "stop clock" approach to equitable tolling, whereby a petitioner may simply add the time during which he was impeded by an extraordinary circumstance to extend the period of the statute of limitations, is not appropriate. <u>Smith v. Davis</u>, 953 F.3d 582, 586 (9th Cir. 2020) (en banc), <u>cert. denied</u>, No. 20-5366, 2020 WL 6829092 (2020). Rather, a petitioner "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance exited, but before and after as well, up to the filing of his claim in federal court." <u>Id.</u> at 598-99.

<br>

    **2.**    **Analysis**

    Williams argues he is entitled to equitable tolling "in the gaps between his filings to each court[.]" Dkt. 15 at 6.  In total, Williams appears to argue he is entitled to 1,209 days of equitable tolling during the following time periods: (1) 463 days from April 20, 2016 through July 26, 2017; (2) 114 days between July 26, 2017 through November 16, 2017; and (3) 632 days between March 1, 2018 and November 22, 2019. Id. at 6-7.  Williams claims various issues support equitable tolling during these time periods, including receiving delayed notice of state habeas proceedings, a limited period of administrative segregation, limited periods of lack of access to legal papers, mental impairments, lack of counsel, limited law library access, and prison transfers. Id. at 2-9.

    Williams' claim to equitable tolling fails.  First, Williams asks this Court to apply the "stop clock" approach the Ninth Circuit recently rejected in Smith.  953 F.3d at 586.  Moreover, any claim for equitable tolling is belied by the fact Williams filed six state habeas petitions between July 17, 2017 and November 1, 2019, the date he filed the instant Petition.  See pet. at 39; lodgs. 10, 12, 17, 23, 41.  Williams also filed numerous other substantive pleadings during this time period, including a petition for writ of certiorari in the United States Supreme Court.  See lodgs. 16, 19, 20, 21, 22, 25, 26, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40.  Williams offers no reason why he was able to file state petitions and other substantive pleadings during this time but unable to file the instant federal Petition.  See Ramirez, 571 F.3d at 998 (finding even though petitioner claims he was "unable to prepare" his habeas petition due to limited library and copier access, petitioner filed a lengthy and well-researched motion in federal court and successful discovery motion and thus was not entitled to equitable relief); Roberts v. Marshall, 627 F.3d 768, 773 (9th Cir. 2010) (finding petitioner was not entitled to equitable tolling for mental impairments during period in which he was able to file state habeas petitions raising the same arguments he presented in his federal habeas petition); Salazar v. Ryan, No. CV-17-1132-PHX-JAT-JFM, 2018 WL

19

1  2426175, at *2 (D. Ariz. May 30, 2018), certificate of appealability denied, 2018 WL

2  8665264 (9th Cir. Nov. 5, 2018) (finding petitioner provided "no rationale for why he

3  was able to file numerous state petitions, but not his federal petition" and was not

4  entitled to equitable tolling).  In fact, the claims in the instant Petition largely mirror

5  those filed in state court.  Williams, therefore, fails to meet his "heavy burden" of

6  demonstrating an extraordinary circumstance was the proximate cause of his

7  untimeliness and the extraordinary circumstance made it impossible to file the Petition

8  on time.  Rudin, 781 F.3d at 1055.

9       Hence, equitable tolling does not render the Petition timely.

10                              **IV.**

11                       **RECOMMENDATION**

12       IT IS THEREFORE RECOMMENDED that the Court issue an Order: (1)

13  accepting this Final Report and Recommendation; (2) GRANTING the Motion to

14  Dismiss the Petition as untimely; and (3) DISMISSING the Petition with prejudice.

15

16  Dated: July 19, 2021

17                              _____
                                HONORABLE KENLY KIYA KATO
18                              United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28